The next case is number 09-1449, Eastern Awning v. Harold's Canvas Company. This case is number 09-1449, Eastern Awning v. Harold's Canvas Company. Mr. Fahy, when you are ready. Good afternoon, Your Honors. May it please the Court? I'm Patrick Fahy. I'm here representing the appellants in this case, Eastern Awning Systems and Stephen Lucas. And this is an appeal of a summary judgment that turned exclusively on the district court's construction of the patent suit, the 095 patent. In particular, the threaded vertical pitch adjustment rod secured against vertical movement, is that it? That's correct, Your Honor. More particularly, the focus of the claim construction proceedings below was on the phrase secured against vertical movement. And the question is secured when? That's exactly right, Your Honor. Over time, the dispute in front of the district court focused on just that issue, which is, is there going to be a temporal limitation tied into that claim language, or is there going to be the absence of a temporal limitation, which was Eastern Awning's position that the patent claim as written didn't include any such limitation, and that it was fundamentally wrong to take the... Did it disclose any aspect of the invention where it was not temporal, where it was temporal? Did the 095 patent disclose any embodiment of the invention where the pitch adjustment rod was not, where the limitation was not temporal? Well, the court held it does not cover an adjustment rod that moves vertically after the device is assembled, right? Yes, Your Honor. Was there anything in the spec that disclosed it moving after the device is assembled? I believe there was, Your Honor. I think there were fundamentally two sources of that that we presented to the district court. The first was the claim language itself that obviously begs the question, but it didn't have that temporal limitation in it. The second was the embodiments depicted in figures 1 through 3, which showed the proximal end of the lateral arm of the awning, which is what this invention is. Well, are we talking about figure 26 in figure 5? Number 26 in figure 5? That was the focus of the district court, Your Honor. Number 26 isn't in figures 1 through 3. That's correct, Your Honor. Figure 5 is a specific embodiment discussed in column 3 of the patent. In discussing that embodiment, the patent even there didn't talk about a temporal limitation. In fact, that's the only place in the patent where there's any exposition on this vertical pitch adjustment rod. And the language that was employed in column 3 was simply disclosing a nut, the nut of the vertical pitch adjustment rod, bearing against a plate. In the entirety of the written description, that's the only place that you find any time where the patentee is addressing the concept of what that pitch adjustment rod's relationship to the bracket mounting means is. And in my view, in Eastern Awning's view, there's no temporal component there of a nut bearing against a plate. Doesn't the word secured appear numerous times in the patent, and each other time that it appears, it's clear that it means permanently secured? It is true to say that the word secured appears in various places in the specification. I don't think in any of those instances that there are two issues. This is something the district court ultimately concluded. One is that it's not secured against. That phrase isn't used anywhere other than in claim 6. And in that regard, Eastern Awning came forward with what I think was pretty, well, it was undisputed evidence that secured against doesn't have a temporal component. The second piece, Your Honor. So you're saying the addition of the word against means that it can't be temporal? It can't be permanent? Your Honor, I don't think that there's any dispute that the phrase secured against has no ordinance. My question is whether the word against makes it clearer that this is not permanent. I think in the context of this patent, it does make it more clear because it's a use of the word secured that also includes that preposition, secured against vertical movement. In the context of claim 6, what the patent says is a vertical pitch adjustment rod secured against vertical movement and then goes on to say with respect to the bracket mounting means. So there's this notion of a relational aspect. It's not secured against vertical movement and then more limitations. It's secured against vertical movement with respect to. But just to follow up on Your Honor's question, the other point related to the presence of the word secured is it's not in the context of pitch adjustment. Now, I don't think and I don't think there's any evidence in the record that the word secured in and of itself carries with it a temporal limitation. I think that the record is pretty clear that that notion is undisputed. In fact, the district court's ruling said, I think that this can be a permanent state or a temporary state. And I agree with that. That was the fundamental problem. Why the district court then didn't give the inventor the full scope of that ordinary meaning was based on things that were inappropriate. Based on the thrust of the specification, which doesn't include specifically. You're saying because it's silent, because that wasn't discussed by the inventors, therefore it should be presumed to be included. That's exactly my point, Your Honor, that the law of this court is that an inventor is entitled to claim the full scope of the ordinary meaning unless there's a reason not to give her that. But you find the ordinary meaning by looking at the body of the specification, not the couple of dozen words in the claim. Yes, Your Honor. And here, if you look at the specification, I don't think that there's any dispute that what comes out of that isn't any temporal limitation on the use of the word secured. That was the district court's finding. But everything in the specification was fixed, isn't that right? No, Your Honor. Tell me, when I asked the question earlier, you pointed to Figures 1 to 3, but the rod in particular isn't indicated in Figures 1 to 3. That's correct. There is no depiction of the rod in Figures 1 through 3. The emphasis on Figures 1 through 3 came out of the district court's insistence that we, Eastern Awning… So the only disclosure is of a fixed rod? No, Your Honor. The only disclosure in the specification, if you leave aside the preferred embodiment, which is Figure 5, the only disclosure in the specification as relates to Figure 5 is a nut bearing against a plate. In Column 3 of the patent, that's what is said about that relationship. But where is there a disclosure of the rod which is fixed only temporally? And again, I think it's disclosed in… It's not there. Well, Your Honor, that was the dispute before the district court. In our view, there is no temporal limitation on this claim. And you're trying to tell us that the district court was wrong. Yes, Your Honor. And I'm saying show us where in the specification there is a disclosure of a rod that is not fixed. And again, Your Honor, I can only point to Figures 1 through 3 in the language of the claim. Which doesn't have the disclosure of the rod at all. Well, in front of the district court, Your Honor, the defendants conceded that what Figures 1 through 3 disclosed was that a pitch adjustment rod in that configuration would move up and down with the horizontal pivot barrel when it was in its load-shedding state. There was no dispute on that issue when we had our second hearing. Then why did the judge decide against you? Well, Your Honor, I think the judge decided against us for a couple of reasons that plainly contradict what claims construction is supposed to entail. I think the judge was set upon finding evidence of the inventor's actual intent that what was contemplated at the time of invention was the embodiment of the accused device. And I think the district judge, well, he said, I want to hear the inventor's testimony. I want to see him, if you're not prepared to come in and have him testify. If they contemplated the accused device, the judge did a pretty poor job of exemplifying it in the patent. Well, Your Honor, again, I respectfully disagree. I think what the inventor was doing was claiming broadly and describing the mechanical relationship of these parts. And to anyone who looks— Not claiming broadly, but disclosing narrowly. Yes, Your Honor. And consistent with this court's approach to claims construction, an inventor shouldn't be penalized for doing just that. Inventors claim broadly all the time. And the issue of enablement, or did the inventor have it, so to speak, was something that I think, to follow up on your question, was another thing that perhaps confused the district court. The defendants at the first hearing suggested that, you know, how would somebody—suggested that with no evidence in the record whatsoever. How would somebody skilled in the art know how to make this invention if there wasn't this disclosure? I think that's an invalidity issue, and I don't think it was an appropriate response to raise it in claims construction. And I think this court has been abundantly clear on that. Where in the record is there support for your argument that the district court relied on the accused's device in coming to its claim construction? Now, you said it asked for the inventor's testimony. Is that all that you have to show that he specifically formulated his claim construction to meet the accused's device? What is there in the record on that? No, Your Honor. I guess what I would say—again, I have two answers. One is more succinct. He said it in his claims construction ruling. The judge, when he ruled—and if you'd just bear with me for a moment, I'll find it, Your Honor. At the March 19th hearing, so it's the Joint Appendix at 337, Your Honor. The judge held—in sum, it means held in place against vertical movement. Now, that was the construction that Eastern Awning had advocated, that that's what that really meant. But then the judge went on to say—and again, I'm quoting— on that basis, it does not cover an adjustment rod that moves vertically relative to the bracket mounting means after the device is assembled. And in my view—and this is just the tip of the record iceberg, because I think when you read the hearing transcript, it's clear to me that the judge kept going to the accused's device. And here in his construction, I believe what he's doing is actually reading on the accused's device. And again, I don't—I think that was the result of the sort of prolonged procedural history and the defendant's repeated attempts to file motions for summary judgment that put before the district court too much about the accused's device. But if the claim can't read on the accused's device, there's no way, no matter what happens next, that you could win this case. I think what—Your Honor, effectively, that was right. But what it did was essentially precluded us from argument equivalency. At the end of the day, this ruling enabled us to stipulate the judgment and save that on the view that we were going to lose these claims construction issues. We had lost these claims construction issues. And I think the methodology employed by the district court was so at odds with what this court has pronounced over and over again. You mentioned the delay a few times. November 2004 is a long way from March 2009. Do you think the result in this case was affected by that delay? I do not, Your Honor. I think that, unfortunately, the first hearing resulted in a ruling that was then carried through March 19, 2009. I don't think the district court's view changed. I don't think—the evidence certainly didn't change. The only thing—well, nothing changed. So the short answer is no, Your Honor, I don't. I think that the judge adhered to his view of this patent. I think it was tainted by the accused's device. I think it was tainted by this—these sort of shadowings of invalidity issues. You know, how is an inventor going to understand this? Well, Your Honors, there was absolutely no evidence in front of the district court as to whether someone skilled in the yard would be confused or not know how to make one of these. In fact, Mr. Toffee testified, and we cited in our brief, that this is exactly how you would configure a bracket assembly for an awning arm if you wanted to adjust the pitch. You would need that bracket assembly to have a pitch adjustment rod secured against vertical movement with respect to the bracket mounting means, so that while that rod stayed steady, the pitch would be adjusted when the bolt was turned. And that mechanism, that embodiment, was something that Mr. Toffee testified to, Eastern Awning's witness, Mr. Keogh testified to. I think that it's very well depicted in Claim 6, Your Honor. But if you wanted to keep your option open to operate on a theory of the doctrine of equivalence, then the stipulation that was entered would not have permitted that. Isn't that right? There's no way, if we affirm this claim construction, that the case is over. Yes, Your Honor. And that's why we said that in the stipulation, that the parties agreed that this construction would preclude both a little. We stipulated that based on the construction, and if I could just conclude, Your Honor, and see if I'm over. Based on this construction, that not only would we not be able to prevail on our burden of literal equivalence, but we couldn't prevail on a claim of equivalency either. The court had held that my construction, and now I'm paraphrasing, but my construction does not extend to a vertical pitch adjustment rod that moves. And I'm sorry if I'm beating the proverbial horse, but that was the end of the game for us on both fronts. Okay, thank you. Any more questions for Mr. Fahy? Any more questions? Okay. Thank you, Mr. Fahy. The case is taken under submission. The court will stand in recess for 10 minutes.